**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---

JANE DOE, ET AL.,

                Plaintiffs,

  v.

ANDREW WHELAN, ET AL.,

                Defendants.

3:08-cv-846 (CSH)

---

**RULING ON MOTION TO DISMISS**

HAIGHT, Senior District Judge:

       Plaintiff Jane Doe ("Plaintiff") and her three minor children ("the Doe children")

(collectively, "Plaintiffs") bring this action pursuant to 42 U.S.C. § 1983 against Defendants

Andrew Whelan and David Williams, both employees of the State of Connecticut's Department

of Children and Families ("DCF"), alleging that Defendants deprived Plaintiffs of their rights to

due process and to be free from unreasonable seizures under the Fourth, Fifth and Fourteenth

Amendments to the United States Constitution.  Specifically, Plaintiffs contend that their rights

were violated when the Doe children were removed from Jane Doe's "care and custody on an

emergency basis as the result of her being a victim of domestic violence and without any basis

for finding that her children were immediately threatened with harm."  (Compl. ¶ 1.)  Defendants

move pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss Plaintiffs' claims for lack

of subject matter jurisdiction, arguing that the claims are barred by the Rooker-Feldman doctrine

because "any finding that Defendants in this case acted improperly would constitute

impermissible review by this court of the Connecticut court's final judgment that the defendants

acted appropriately in temporarily removing [the] minor children." [Doc. 27 at 1]  Plaintiffs

respond that <u>Rooker-Feldman</u> does not apply because they do not complain of injuries caused by the state court's order sustaining the children's removal.  Instead, Plaintiffs maintain that their injuries were caused by the actions of Defendants, two DCF employees who removed the Doe children on a 96 hour emergency hold prior to obtaining a court order, and that the removal was unconstitutional because it was based solely on Jane Doe's status as a victim of domestic violence.  For the reasons stated herein, Defendants' Motion to Dismiss [Doc. 27] is DENIED.

I.      FACTS

In April 2005, Plaintiff Jane Doe resided in New Canaan, Connecticut with her three daughters ("the Doe children"), who were then 2, 4, and 7 years old, and their father, Richard Roe.  On April 30, 2005, Roe assaulted Plaintiff, and was arrested and charged accordingly. DCF was notified of the arrest and commenced an investigation.  On May 1, 2005, DCF entered into a Service Agreement/Safety Plan with Plaintiff, which stated in part that Plaintiff would "cooperate with DCF and recommendations.  Mother and children are not to have any contact with [Richard Roe]."

On May 2, 2005, the Norwalk Superior Court issued a Family Violence Protective Order against Roe to protect Jane Doe ("Victim").  In the Protective Order, Roe was ordered to "refrain from threatening, harassing, stalking, assaulting, molesting, or sexually assaulting the Victim" and to "refrain from entering the family dwelling, the dwelling of the Victim or wherever the Victim shall reside."  The Protective Order did not extend to the Doe children, nor did it prohibit Roe from having any contact with Plaintiff.  On May 2, 2005, Plaintiff was informed by the Domestic Violence Crisis Center ("DVCC") that the court had issued a "Full Protective Order - the offender cannot have any threatening, harassing or assaultive behavior toward you, and the

offender is not permitted in your residence."

On May 5, 2005, DCF entered into a revised Service Agreement/Safety Plan with Plaintiff, which replaced the earlier one.  It stated that Plaintiff will "comply with Protective Order by not allowing Mr. [Roe] in the home.  You are to contact the Police @ 9-1-1 in case the order is breached in any way.  Follow through with DVCC in seeking counseling services for yourself.  Services are to be sought for your children if needed."

On May 25, 2005, DCF filed neglect petitions in Juvenile Court concerning the three Doe children, citing as the jurisdictional facts that: "There is a history of domestic violence, including severe physical injuries"; "On 04-30-05, [one of the Doe children] witnessed her mother lying on the floor with her father on top of her mother, punching her"; "Mother has adamantly denied any domestic violence in the past and has pleaded with the Department in the past not to speak with her husband" and "Father has not met with the Department."  By letter dated May 25, 2005, DCF notified Plaintiff that its investigation was being "transferred to Child Protective On-going Services with the expectation that you will follow through and comply with the Department and all its recommendations," including the May 5 DCF Service Agreement and the Protective Order issued by the Norwalk Superior Court.

After his arrest on April 30, Roe moved out of the family home in New Canaan and was living at another property that he owned in Stamford, Connecticut.  On June 4, 2005, Plaintiff and the Doe children visited Roe at the Stamford property. At the end of the visit, Roe requested to come to the house in New Canaan to tuck the children into bed, and Plaintiff reluctantly agreed.  While Roe was at the house in New Canaan, Defendant Andrew Whelan, who was a Social Work Supervisor at DCF, and two New Canaan police officers knocked on the door and

sought entry to the house.  Upon learning of Roe's presence, Defendant Whelan informed

Plaintiff that DCF would be taking the children.  The Doe children were in bed at the time, and

there was no indication that they or Plaintiff had been physically harmed that evening, nor has

any claim been made that Roe had ever physically harmed the Doe children.

Defendant Whelan contacted Defendant David Williams, who was a Program Supervisor

at DCF, and who was designated by the Commissioner of DCF as a person authorized to remove

children without court order on a hold of up to 96 hours, as provided for in Conn. Gen. Stat. §

17a-101g(f).  Such emergency removal without a court order is permitted pursuant to Conn. Gen.

Stat. § 17a-101g(e) under the following circumstances:

> If the Commissioner of Children and Families, or the commissioner's
> designee, has probable cause to believe that the child or any other child in
> the household is in imminent risk of physical harm from the child's
> surroundings and that immediate removal from such surroundings is
> necessary to ensure the child's safety, the commissioner, or the
> commissioner's designee, shall authorize any employee of the department
> or any law enforcement officer to remove the child and any other child
> similarly situated from such surroundings without the consent of the
> child's parent or guardian.

Defendants Whelan and Williams ordered and executed the immediate removal of the Doe

children at 9:40 PM on Saturday, June 4, 2005 for the following stated reasons: "Mother violated

a Protective Order for father not to be at the home.  Father was home with his family even though

there are serious concerns about domestic violence.  Mother lied, stating that father was not

home; Whelan saw father run away in the woods."

DCF placed the Doe children with Roe's sister and her husband in Branford, Connecticut.

On Tuesday, June 7, 2005, Superior Court Judge William Mottolese issued three *ex parte* Orders

of Temporary Custody ("OTC"), one for each child, temporarily vesting custody of the children

with DCF, continuing the children's placement with relatives and setting the matter down for a

hearing.  Thereafter, Judge Carl E. Taylor of the Superior Court for Juvenile Matters heard two

full days of evidence, on June 22, 2005 and July 12, 2005.  Plaintiff Jane Doe, Richard Roe, and

the Doe children were represented by separate counsel at the hearing.  On July 13, 2005, Judge

Taylor issued his order, stating:

> [A]s to all three children, the Court finds that each of the children is in
> immediate physical danger of surroundings and that continuation in their
> home is contrary to their welfare.  Therefore, the Court will sustain the
> Order of Temporary Custody and invest custody in the Commissioner of
> the Department of Children and Families.

Plaintiff Jane Doe's counsel filed a motion to vacate the Order of Temporary Custody ("OTC"),

but Jane Doe did not appeal Judge Taylor's order sustaining the OTC.  By contrast, counsel for

Richard Roe did appeal the order, but Roe is not a party to this action.  On or about September 6,

2005, Plaintiff and Roe entered pleas of *nolo contendere* to the neglect petition, whereupon the

Doe children were returned to Jane Doe's custody, approximately three months after having been

removed.  Therefore, Plaintiff's motion to vacate the OTC was never heard, and Roe's appeal of

the OTC was dismissed as moot on September 28, 2005.  Roe filed a motion for rehearing of the

dismissal on October 11, 2005, which was denied on December 8, 2005.

Plaintiffs' Claims

The Complaint sets forth the following allegations and claims for relief: Defendants did

not have probable cause to believe that any of the Doe children were in imminent risk of physical

harm, and Defendants removed the Doe children from Plaintiff's custody and care without

having any basis for finding that they were immediately threatened with harm or that their

immediate removal was necessary to ensure the children's safety.  Defendants did not consider or

investigate alternatives to removing the Doe children before or during the 96 hour hold.

Defendants' actions and omissions were based on an unconstitutional presumption that the Doe

children were neglected and/or at risk of suffering harm in Plaintiff's custody because she was a

victim of domestic violence.  As a result of Defendants' acts and omissions, the Doe children

were not returned to Plaintiff's custody until she agreed to enter a plea of *nolo contendere* to the

neglect petition in September 2005.  Plaintiff entered the *nolo* plea not because she had neglected

the children but rather because it was likely that the children would not have been returned to her

custody for at least nine months had she not entered the plea.  Once DCF removed the Doe

children, Plaintiff faced insurmountable delays in her efforts to regain custody.  As a result of

Defendants' acts and omissions, Plaintiffs suffered severe stress and ongoing emotional harm,

and they needed and will likely continue to need medical care and counseling in the future.

Defendants deprived Plaintiffs of their rights to due process and to be free from unreasonable

seizures under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

Plaintiffs seek monetary damages, costs and attorney's fees.

## II.   STANDARD OF REVIEW

A court must grant a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1)

where a plaintiff has failed to establish subject matter jurisdiction.  Golden Hill Paugussett Tribe

of Indians v. Weicker, 839 F. Supp. 130, 136 (D. Conn. 1993).  For the purposes of Fed. R. Civ.

P. 12(b)(1), "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a

preponderance of the evidence that it exists."  Makarova v. United States, 201 F.3d 110, 113 (2d

Cir. 2000) (citing Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)).  The court should not

draw argumentative inferences in Plaintiff's favor.  Atlantic Mutual Ins. Co. v. Balfour MacLaine

Int'l, 968 F.2d 196, 198 (2d Cir. 1992).  The court should, "however, construe jurisdictional allegations liberally and take as true uncontroverted factual allegations."  Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994).  A court resolving a Rule 12(b)(1) motion for lack of subject matter jurisdiction "may refer to evidence outside the pleadings."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); accord Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000) (noting that district courts may "refer[] to evidence outside of the pleadings, such as affidavits").

III.      DISCUSSION

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction, on the basis that Plaintiffs' claims are barred by the Rooker-Feldman doctrine.  Because the jurisdiction of a federal district court is "strictly original," federal district courts may not sit in direct appellate review of a state court judgment.  Corsini v. Ross, 1998 U.S. App. LEXIS 10450, at *3 (2d Cir. May 11, 1998) (quoting Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 68 L. Ed. 362, 44 S. Ct. 149 (1923)).  District courts "do not have jurisdiction . . . over challenges to state court decisions . . . even if those challenges allege that the state court's action was unconstitutional." D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983).

The Rooker-Feldman doctrine bars claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  From this holding, the Second Circuit has identified four requirements for the application of Rooker-Feldman:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must

"invite district court review and rejection of [that] judgment[]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced." The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (quoting Exxon Mobil, 544 U.S. at 284).  Because the substantive requirements form the core of the doctrine, and because the parties have addressed the vast majority of their arguments to those prongs of the test, the Court will consider the substantive requirements first.

A.    Substantive Requirements

The Rooker-Feldman doctrine deprives the federal district court of jurisdiction where the federal court plaintiffs complain of injuries caused by the state court judgment and invite the district court to review and reject that judgment.  Hoblock, 422 F.3d at 85.  Here, Connecticut Superior Court Judge Carl E. Taylor issued an order on July 13, 2005, after a two day hearing, finding that the Doe children were in "immediate physical danger [from their] surroundings and that continuation in their home is contrary to their welfare."  Judge Taylor also explicitly "sustain[ed]" the Order of Temporary Custody committing the children to DCF's care. Defendants contend that "Judge Taylor's finding, necessarily made by a preponderance of the evidence, that the children were in immediate physical danger from their home surroundings and that their absence from those surroundings should be continued, constitutes a state court ruling that, at the time the children were placed on the 96-hour hold and continuing thereafter, the probable cause standard set forth in [the relevant Connecticut statute] was more than met." [Doc. 27 at 7-8]

In Connecticut, the standard of proof in a hearing on an order of temporary custody "is the normal civil standard of a fair preponderance of the evidence." In re Kaurice B., 83 Conn.

-8-

App. 519, 522-23, 850 A.2d 223, 225 (2004). By contrast, the standard for DCF's invoking a 96 hour emergency removal of a child pursuant to Conn. Gen. Stat. § 17a-101g(f) without first obtaining a Court order is whether DCF "has probable cause to believe that the child... is in imminent risk of physical harm from the child's surroundings and that immediate removal from such surroundings is necessary to ensure the child's safety." Conn. Gen. Stat. § 17a-101g(e).   In Connecticut, "proof of probable cause is not as demanding as proof by a fair preponderance of the evidence." 36 Deforest Ave., LLC v. Creadore, 99 Conn. App. 690, 694-95, 915 A.2d 916, 920 (Conn. App.), appeal denied, 282 Conn. 905 (2007).  Thus, DCF has a higher standard of proof to satisfy in a hearing on a contested order of temporary custody, namely preponderance of the evidence, than it does in executing a 96 hour hold, where the standard is probable cause.

Defendants further note that "nothing had changed in terms of additional [negative] behaviors by either parent between the time of the initial taking [of the children] and the [OTC] hearing." [Doc. 44 at 1]  Because "no new facts or developments [had] occurred between the taking of the children and the Superior Court's finding of immediate danger," Id., "the bases for the 96 hour hold and the subsequent [judicial] findings that the children were at imminent risk were identical." [Doc. 44 at 2-3] Therefore, Defendants maintain that Judge Taylor's finding by a preponderance of the evidence that the Doe children remained in immediate danger on July 13, 2005 was necessarily a finding that Defendants Whelan and Williams had met the lesser probable cause standard when they removed the children from the home due to imminent risk on June 4, 2005.  Defendants contend that Plaintiffs' lawsuit violates Rooker-Feldman in that it impermissibly seeks to have the federal district court review and reject the state court judgment: "Were this court to ultimately find that defendants Whelan and Williams lacked probable cause

to initiate the Order of Temporary Custody proceedings by placing the 96-hour hold, it would be directly reviewing the sustaining of that temporary custody order by Judge Taylor." [Doc. 27 at 14]

Plaintiffs respond that they do not directly "seek reversal" [Doc. 40 at 17] of the state court judgment sustaining the Order of Temporary Custody, which is true in light of the fact that the Doe children have already been returned to Jane Doe's custody.  However, Plaintiffs do seek reversal in the sense that Plaintiffs want this Court to find that Defendants lacked the requisite basis to remove the children, notwithstanding that Judge Taylor subsequently sustained and continued the removal of the children.  The Court concludes that Plaintiffs do, at minimum, seek to have this Court *reject a legal conclusion* that the state court has reached.  However, this does not necessarily mean that the suit is barred by <u>Rooker-Feldman</u>, although the claim may be otherwise precluded[1]:

> The [Supreme] Court [in <u>Exxon Mobil</u>] points out that U.S.C. § 1257 (and thus <u>Rooker-Feldman</u>) does not deprive a district court of subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

<u>Hoblock</u>, 422 F.3d at 86 (quoting <u>Exxon Mobil</u>, 544 U.S. at 293 (quoting <u>GASH Assocs. v. Village of Rosemont</u>, 995 F.2d 726, 728 (7th Cir. 1993))) (internal quotation marks omitted).

Thus, the assertion of an independent claim can enable a complaint to survive <u>Rooker-Feldman</u> challenge even where a state court proceeding is in some respect involved in the

---

[1]  The parties have not raised or briefed, and the Court has not considered or decided herein, any arguments with respect to issue or claim preclusion.

underlying facts.  For example, in <u>Francis v. City of New York</u>, 197 Fed. Appx. 26, 29 (2d Cir.

2006), the Plaintiffs-Appellants had claimed that the Defendant-Appellee child protection

worker's decision to remove their children in the absence of imminent danger had violated their

Fourteenth Amendment rights and was motivated by discriminatory animus based on national

origin.  The Second Circuit held that the district court had erred in dismissing the complaint

under <u>Rooker-Feldman</u>, because the Plaintiffs-Appellants "[had] not petitioned the federal court

to undo the state court's emergency removal of the children...; rather, they have asserted an

independent claim."  <u>Id</u>.; <u>see also</u> <u>Morrison v. City of New York</u>, 591 F.3d 109, 110 (2d Cir.

2010) ("Plaintiff contends her suit does not challenge the Family Court order [that she undergo a

psychiatric evaluation], but rather challenges the independent determinations made by personnel

of the hospital - in particular the determination that she was a danger to herself or others and

should therefore be further detained. We agree that the complaint can be so interpreted and that,

to the extent the complaint seeks relief based on discretionary decisions of the hospital that were

not mandated by the Family Court order, it should not have been dismissed under

<u>Rooker-Feldman</u>.")

     The Second Circuit explains that "the key . . . lies in the second substantive <u>Rooker-</u>

<u>Feldman</u> requirement: that federal plaintiffs are not subject to the <u>Rooker-Feldman</u> bar unless

they *complain of an injury* caused by a state judgment.  Indeed, this is the core requirement from

which the others derive." <u>Hoblock</u>, 422 F.3d at 87 (emphasis in original).  In the case at bar,

Plaintiffs maintain that they "complain of injuries caused by the defendant DCF workers' initial

taking of the children from Jane Doe's custody, without [first] seeking a court order, based on an

unconstitutional presumption that the children were in imminent risk of harm in Jane Doe's

custody solely because Jane Doe was a victim of domestic violence." [Doc. 40 at 17-18]  Indeed,

"a party is not complaining of an injury 'caused by' a state-court judgment when the exact injury

of which the party complains in federal court existed *prior* in time to the state-court proceedings,

and so could not have been 'caused by' those proceedings."  McKithen v. Brown, 481 F.3d 89,

98 (2d Cir. 2007) (emphasis in original).

        Plaintiffs argue, in essence, that Defendants injured them by removing the children at

night on a weekend, using a 96 hour emergency hold, rather than waiting until they could obtain

a court order.  The children were removed on an emergency basis on June 4, 2005, and on June 7,

2005, Superior Court Judge William Mottolese issued *ex parte* Orders of Temporary Custody for

each child, continuing the children in DCF's care.  Those OTCs were ultimately sustained, after

hearing, by Judge Taylor on July 13, 2005.  Plaintiffs' narrow claim that the Defendant DCF

employees acted unconstitutionally in the manner in which they exercised the discretion afforded

to them under the Connecticut statute providing for 96 hour holds does not violate Rooker-

Feldman, because it relates solely to actions taken prior to the entry of any court order.[2]

        However, it would violate Rooker-Feldman if Plaintiffs were to claim that the individual

Defendant DCF employees deprived them of their constitutional rights after that three day

interval, given that the children remained in DCF custody thereafter pursuant to Court orders,

rather than through any authority vested in Defendants, and thus a challenge to DCF's continued

custody of the children after June 7, 2005 would be a challenge to the state court judgment itself.

See Hoblock, 422 F.3d at 88 ("In the child-custody [context], if the state has taken custody of a

---

        [2]  The parties have not raised or briefed, and the Court has not considered or decided
herein, any arguments with respect to any immunity to which Defendants may be entitled.

child pursuant to a state judgment, the parent cannot escape <u>Rooker-Feldman</u> simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child.")

     Defendants point to several allegations in the Complaint wherein Plaintiffs complain of injuries that occurred *subsequent to* the Court orders, and which were therefore caused by the Court orders, and yet are attributed instead to the Defendant DCF employees: "As a result of defendants' acts and omissions, the Doe children were not returned to Plaintiff Jane Doe's custody until she agreed to enter a plea of *nolo contendere* to the neglect petition in September 2005" (Compl. ¶ 36), and "Once DCF removed Plaintiff Jane Doe's children, she faced insurmountable, long delays in her efforts to regain custody." (Compl. ¶ 38). The Court agrees with Defendants that these allegations are problematic under <u>Rooker-Feldman</u>, to the extent that they seem to assign responsibility to Defendants for the decisions of the two judges who ratified the children's removal and continued the children in DCF custody.

     Plaintiffs respond that these allegations in the Complaint regarding the long delays in regaining custody of the children are merely "one element of damages," and Plaintiffs reiterate that it is only "defendants' actions before the entry of a court order" about which they complain. [Doc. 40 at FN 10]  The Court concludes that Plaintiffs' apparent overstatement in the Complaint of the scope of their potential damages does not go to the heart of their claim, which is that the Defendant DCF workers acted unconstitutionally, given the circumstances, in removing the children immediately on an emergency basis, rather than waiting for a court order. That claim, which is Plaintiff's core contention, does not run afoul of <u>Rooker-Feldman</u> because it does not complain of an injury from a state court judgment and thus does not serve to deprive this Court

of jurisdiction on that basis.

The following is key to establishing the inapplicability of <u>Rooker-Feldman</u> here:

[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.

<u>Hoblock</u>, 422 F.3d at 88.  Here, the actions of the third parties, namely the Defendant DCF employees, in removing the children on an emergency basis without a court order, purportedly based solely on Jane Doe's status as a domestic violence victim, were clearly not *produced by* the state court judgments that followed.  Instead, the subsequent rulings of Superior Court Judges Mottolese and Taylor, who issued *ex parte* Orders of Temporary Custody and who sustained those OTCs after hearing, respectively, served instead to *ratify* the actions of the DCF employees. In ratifying the actions, the state court presumably concluded under the controlling standard that the emergency removal of the children was reasonable and comported with governing law. However, that subsequent conclusion by the state court certainly did not cause or produce the initial removals.  Thus, the <u>Rooker-Feldman</u> doctrine, which the Supreme Court has emphasized is to be construed narrowly, is not implicated.

B.      Procedural Requirements

As noted above, the procedural requirements for the applicability of <u>Rooker-Feldman</u> are that "the federal court plaintiff must have lost in state court" and that the state court judgment must have been "rendered before the [federal] district court proceedings commenced." <u>Hoblock</u>, 422 F.3d 77, 85.  There is no debate here that all the state court judgments potentially at issue were rendered before this federal suit was filed.

As to the requirement that the federal court plaintiffs must have lost in state court,

Plaintiffs confine their argument that they are not state court losers to a single footnote. [See Doc. 40 at FN 15]  Specifically, Plaintiffs contend that "the Doe Children should not be considered to have 'lost' with respect to the juvenile court's ruling on the OTC because their appointed counsel did not oppose the OTC on their behalf and the OTC hearing did not establish them as 'winners' or 'losers.'"  Id.  With regard to Jane Doe, while conceding that "the juvenile court issued a ruling on the OTC unfavorable to plaintiff Jane Doe," Plaintiffs nonetheless maintain that Jane Doe did not lose in state court because the children were eventually returned to her custody, at the time that she and Richard Roe entered pleas of *nolo contendere* to the neglect petition.  Id.

The Second Circuit has recently held in the child protection context that plaintiffs were not "state court losers" for Rooker-Feldman purposes where the children had already been returned to the parent(s).  V.S. v. Muhammad, 2010 U.S. App. LEXIS 3017 (2d Cir., Feb. 17, 2010) ("[Plaintiff mother] is not a 'state-court loser,' since, prior to the commencement of the [federal lawsuit], [the child protection agency] had withdrawn all its claims against [Plaintiff] and the Family Court had released [Plaintiff's child] to [Plaintiff's] custody."); Green v. Mattingly, 585 F.3d 97, 102-03 (2d Cir. 2009) (Plaintiff was not a state court loser, and thus Rooker-Feldman doctrine did not apply, because the Family Court had issued a superseding order returning Plaintiff's child to Plaintiff's custody, and the claims against Plaintiff had been dismissed.).

However, the procedural posture of the child custody proceedings in those cases was somewhat different from the instant case, so they do not necessarily establish that Plaintiffs here were not state court losers.  For example, in Green, the child was returned to the parent's custody

after the Family Court determined that the child was at no imminent risk, 585 F.3d at 100, whereas here the state court judge found that the children were in "immediate physical danger," and they were only later returned to Plaintiff Jane Doe at the time that she entered a plea of *nolo contendere* to the neglect petition.

Given the complex confluences and conflicts between the rights and interests of the various parties to a child protection proceeding, it is significantly more difficult to identity "losers" and "winners" in such cases, if in fact there are any, than it is in most other types of cases. The Court will not endeavor to do so here, given that such a determination is rendered unnecessary by the Court's holding that the substantive requirements of <u>Rooker-Feldman</u> are not met, and the doctrine only operates to deprive the Court of jurisdiction when all four prongs are satisfied.

IV.    <u>CONCLUSION</u>

For the reasons stated herein, Defendants' Motion to Dismiss [Doc. 27] is DENIED. The case shall proceed in accordance with the deadlines set forth in the Court's order of December 30, 2009, with discovery due August 5, 2010 and dispositive motions due September 6, 2010, unless the parties move for an extension of those deadlines.

It is SO ORDERED.

Dated: New Haven, Connecticut

March 29, 2010

      */s/ Charles S. Haight, Jr.*_____
Charles S. Haight, Jr.
Senior United States District Judge