UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------ X
Jane Doe, et. al.

|  | Plaintiffs, | **MEMORANDUM RULING** |
|---|---|---|
| -against- | | Case No. 08-846 (TLM) |

Andrew Whelan, et. al.,

                                        Defendants,
------------------------------------------------------------ X

        Before the Court is defendants Andrew Whelan, David Williams, and Kenneth Mysogland's

Motion for Summary Judgment [Rec. Doc. 97], plaintiffs Jane Doe and her three minor children's

("the Doe Children") (collectively, "Plaintiffs") Memorandum in Opposition thereto [Rec. Doc. 105],

and defendants' Reply Memorandum [Rec. Doc. 110] in further support of their motion for summary

judgment.   For the reasons that follow, defendants' motion for summary judgment will be

GRANTED.

        Plaintiffs' complaint asserts that defendants violated their constitutional rights when they

removed the Doe children from Jane Doe's "care and custody on an emergency basis as the result of

her being a victim of domestic violence and without any basis for finding that her children were

immediately threatened with harm." (Compl. ¶ 1.) Plaintiffs bring this action pursuant to 42 U.S.C.

§ 1983 against defendants for depriving plaintiffs of their rights to due process and to be free from

unreasonable seizures under the Fourth, Fifth, and Fourteenth Amendments to the United States

Constitution.

**I. Background**[1]

---

        [1]Adopted in part from the Court's ruling on defendants' Motion to Dismiss [Rec. Doc. 51]
(Haight, J.).

In April 2005, plaintiff Jane Doe resided in New Canaan, Connecticut with her three daughters, who were then 2, 4, and 7 years old, and their father, Richard Roe.[2]  Motion to Dismiss Ruling at 2 [Rec. Doc. 51]. After an arrest on April 30, 2005, Roe moved out of the family home in New Canaan and was living at another property that he owned in Stamford, Connecticut. *Id.* Due to Roe's history of domestic violence, the Norwalk Superior Court issued a Family Violence Protective Order against Roe to protect Jane Doe ("Victim") on May 2, 2005. Ex. I. In the Protective Order, Roe was ordered to "refrain from threatening, harassing, stalking, assaulting, molesting, or sexually assaulting the Victim" and to "refrain from entering the family dwelling, the dwelling of the Victim or wherever the Victim shall reside." Ex. I.

On June 4, 2005, plaintiff Jane Doe and the Doe children visited Roe at his Stamford property. Motion to Dismiss Ruling at 3 [Rec. Doc. 51]. At the end of the visit, Roe requested to go to the house in New Canaan to tuck the children into bed, and plaintiff Jane Doe reluctantly agreed. *Id.* While Roe was at the house in New Canaan, defendant Andrew Whelan, a Social Work Supervisor at Connecticut's Department of Children and Families ("DCF"), and two New Canaan police officers knocked on the door and sought entry to the house. *Id.* Jane Doe lied to Whelan about whether Roe was at the house. *Id.* at 4. After a few minutes of questioning, Jane Doe admitted that Roe was at the house. *Id.* Whelan also witnessed Roe exit the home and run into the woods nearby. *Id.* Upon learning of Roe's presence, defendant Whelan informed Jane Doe that DCF would be taking the children.

Defendant Whelan then contacted defendant Kenneth Mysogland, a Program Supervisor at DCF, and designated by the Commissioner of DCF as a person authorized to remove children without

---

[2]Plaintiffs refer to the Doe Children's father as Richard Roe, while defendants refer to him as ▮▮▮▮▮▮▮▮  The Court will refer to him as Richard Roe.

2

court order on a hold of up to 96 hours, as provided for in Section§ 17a-101g(f) of the Connecticut

General Statute. Pl. Opp. at 7; Ex. 2 at 102. Defendants Whelan and Mysogland executed the removal

of the Doe children at 9:40 p.m. on Saturday, June 4, 2005. Ex. 2 at 102.

    DCF placed the Doe children with Roe's sister and her husband in Branford, Connecticut.

Motion to Dismiss Ruling at 4 [Rec. Doc. 51]. On Tuesday, June 7, 2005, Superior Court Judge

William Mottolese issued three *ex parte* Orders of Temporary Custody ("OTC"), one for each child,

temporarily vesting custody of the children with DCF, continuing the children's placement with

relatives, and setting the matter down for a hearing. Ex. L. Thereafter, Judge Carl E. Taylor of the

Superior Court for Juvenile Matters heard two full days of evidence, on June 22, 2005 and July 12,

2005. Exs. M, N, P, R. Plaintiff Jane Doe, Richard Roe, and the Doe children were represented by

separate counsel at the hearing. On July 13, 2005, Judge Taylor issued his order, stating:

> As to all three children, the Court finds that each of the children is in immediate physical
> danger of [their] surroundings and that continuation in their home is contrary to their welfare.
> Therefore, the Court will sustain the Order of Temporary Custody and invest custody in the
> Commissioner of the Department of Children and Families.

Ex. O.

    Plaintiffs assert that defendants' immediate removal of the Doe Children from Jane Doe's

custody deprived plaintiffs of their rights to substantive due process and procedural due process and

constituted an unreasonable seizure.

**II. Summary Judgment Standard**

    Summary judgment is appropriate only when the record reflects that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). Such a determination is to be made "after construing the evidence in the light most

favorable to the nonmoving party and drawing all reasonable inferences in its favor." *Sledge v. Kooi*,

564 F.3d 105, 108 (2d Cir. 2009).

Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the nonmoving party has the burden of proof at trial, the moving party must satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim, and if the moving party succeeds the burden shifts to the non-moving party to show that there is a genuine issue for trial. *Id.* at 322-23.

Once the burden shifts to the non-moving party, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* at 324. The non-moving party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970).

There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If no issue of fact is presented and if the movant is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322.

**III.   Discussion**

A. David Williams

There is no factual dispute that defendant David Williams, DCF Program Supervisor, was not involved in the emergency removal of the Doe Children.  It is undisputed that defendant Mysogland actually authorized the removal even though defendant Whelan incorrectly stated that defendant Williams authorized the 96-hour hold. Pl. Opp. at 8, 23. As defendant Williams was not involved in the emergency removal of the Doe Children, defendants' motion for summary judgment on plaintiffs' claims will be granted as to defendant David Williams.

B. Andrew Whelan and Kenneth Mysogland

**1.     Substantive Due Process**

Plaintiffs' assert that defendants' actions deprived them of their substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state. Pl. Opp. at 21. The Court disagrees.

For substantive due process in the child-removal context, the relevant inquiry is whether "the removal . . . would have been prohibited by the Constitution even had the [plaintiffs] been given all the procedural protections to which they were entitled." *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999). The state interference with a plaintiff's liberty interest must be severe before it rises to the level of a substantive constitutional violation. *Southerland v. City of New York*, 680 F.3d 127, 153 (2d Cir. 2011). Specifically, "brief removals of a child from a parent's home generally do not rise to the level of a substantive due process violation, at least where the purpose of the removal is to keep the child safe during investigation and court confirmation of the basis for removal." *Id.* (quoting *Nicholson v. Scoppetta*, 344 F.3d 154, 172 (2d Cir. 2003)). The Second Circuit has stated that there is "no [substantive due process] violation in the case of a temporary custody transfer, in part because

5

it did not result in [the] parents' wholesale relinquishment of their right to rear their children." *Joyner ex rel. Lowry v. Dumpson*, 712 F.2d 770, 778 (2d Cir. 1983) (internal quotations omitted).

      In this case, plaintiffs substantive right under the Due Process Clause to remain together without the coercive interference of the power of the state was not violated by defendants as the Doe Children were removed from their mother's custody for only three days prior to Superior Court Judge William Mottolese's issuance of *ex parte* OTCs, which placed the children with relatives. *Nicholson*, 344 F.3d at 172 ("[E]x parte removals do not infringe on any of the plaintiffs' substantive due process rights."); *Southerland*, 680 F.3d at 153.[3][4]

      Accordingly, defendants' motion for summary judgment on plaintiffs' substantive due process claim will be granted.

### 2. Procedural Due Process and Unreasonable Seizure

      Defendants Whelan and Mysogland assert they are each entitled to summary judgment on Plaintiffs' procedural due process and unreasonable seizure claims as they are each entitled to qualified immunity based on the circumstances they encountered on June 4, 2005. Specifically,

---

[3]Defendants are not liable for the alleged deprivation of plaintiffs' constitutional rights after Judge Mottolese issued the OTC, given that the children remained in DCF custody pursuant to Court order, rather than through any authority vested in defendants. Ruling on Motion to Dismiss at 12 [Rec. Doc. 51].

[4]Plaintiffs' contention that defendants submitted a false affidavit to the court to obtain the *ex parte* OTC in which they falsely noted that defendant Williams, not defendant Mysogland, had authorized the 96-hour hold is inconsequential. Incorrect statements made in the application for the *ex parte* OTC does not preclude judgment for defendants as the plaintiffs can not show that the incorrect information regarding which DCF supervisor authorized the 96-hour hold is necessary to the finding of probable cause to remove the children. *See Southerland v. City of New York*, 521 F. Supp. 2d 218, 230-31 (E.D.N.Y. 2007). Moreover, defendants' omission, in the affidavit they submitted to obtain the ex parte OTCs that Judge Mottolese granted, of the fact that a neglect petition against Jane Doe was "unsubstantiated" prior to June 4, 2005 is likewise inconsequential. The prior neglect petition has no bearing on whether there was an immediate threat to the Doe Children's safety or if there was a risk that they would be left bereft of care and supervision on June 4, 2005.

defendants maintain that the removal of the Doe children was objectively reasonable. The Court

agrees.

State officials are entitled to qualified immunity if "their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). In other words, state officials are entitled to qualified

immunity if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was

objectively reasonable to believe their acts did not violate those rights." *Holcomb v. Lykens*, 337 F.3d

217, 220 (2d Cir. 2003); *Blouin ex rel. Estate of Pouliot v. Spitzer*, 356 F.3d 348, 358 (2d Cir. 2004).

The relevant test for whether state officials are entitled to qualified immunity requires a three

step inquiry:

> "First, [the court] must determine whether plaintiff has alleged a violation of a constitutional
> right. Then [the court] must consider if the violated right was clearly established at the time
> of the conduct. . . . Finally, if plaintiff had a clearly established, constitutionally protected
> right that was violated by the [defendants], [the plaintiff] must demonstrate that defendants'
> actions were not objectively reasonable. " *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d
> 206, 211-12 (2d Cir. 2003) (internal citations omitted).

Plaintiffs have alleged a violation of a constitutional right. Specifically, Plaintiffs allege that

defendants improperly removed the Doe children from plaintiff Jane Doe's care and custody. These

allegations are sufficient to state a violation of a constitutional claim. *Ward v. Murphy*, 330 F. Supp.

2d 83, 91 (D. Conn. 2004) (*citing Tenebaum*, 193 F.3d at 593). It was also clearly established at the

time of the conduct that Plaintiffs had the following rights: 1) procedural due process prior to removal

of the Doe Children from plaintiff Jane Doe's custody absent any emergency circumstances and 2)

not to be subject to unreasonable seizures. *Southerland*, 680 F.3d at 142-43; *Tenenbaum*, 193 F.3d

at 596-600.

The relevant qualified immunity inquiry therefore is whether defendants' actions were

objectively reasonable. The Second Circuit has stated that

> Protective services caseworkers [must] choose between difficult alternatives. ... If they err in interrupting parental custody, they may be accused of infringing the parents' constitutional rights. If they err in not removing the child, they risk injury to the child and may be accused of infringing the child's rights. It is precisely the function of qualified immunity to protect state officials in choosing between such alternatives, provided that there is an objectively reasonable basis for their decision, whichever way they make it.

*Tenebaum*, 193 F.3d at 596-97 (quoting *Van Emrik v. Chemung County Dep't of Social Servs.*, 911 F.2d 863, 866 (2d Cir. 1990)). Specifically, qualified immunity provides "substantial protection for caseworkers," provided "it was objectively reasonable for them to believe that their acts" would not violate clearly established rights. *Id.* The test of "objective reasonableness" is satisfied if "officers of reasonable competence could disagree on the legality of the defendant's actions." *Id.*

In this case, defendants' removal of the Doe Children in accordance with Conn. Gen. Stat. § 17a-101g(e) was objectively reasonable. Defendants executed the removal of the Doe children at 9:40 p.m. on Saturday, June 4, 2005 for the following stated reasons: "Mother violated a Protective Order for father not to be at the home. Father was home with his family even though there are serious concerns about domestic violence. Mother lied, stating that father was not home; [defendant] Whelan saw father run away in the woods." Ex. 16.

**Procedural Due Process**

Ordinarily, parents are entitled to a court proceeding prior to the removal of their children from their custody without their consent. *Nicholson*, 344 F.3d at 171 (quoting *Tenenbaum*, 193 F.3d at 593). However, a child may be taken into custody by a responsible state official without court authorization or parental consent in emergency circumstances. *Id.* (quoting *Tenenbaum*, 193 F.3d at

8

594); C.G.S. § 17a-101g(e).[5] "If the danger to the child is not so imminent that there is reasonably sufficient time to seek prior judicial authorization, ex parte or otherwise, for the child's removal, then the circumstances are not emergent." *Nicholson,* 344 F.3d at 171. To show that emergency circumstances existed, "[t]he government must offer 'objectively reasonable' evidence that harm [was] imminent." *Id.*

The Second Circuit has concluded that the following circumstances constitute immediate danger justifying emergency removal: 1) the peril of sexual abuse; 2) the risk that children will be left bereft of care and supervision; and 3) immediate threats to the safety of the child. *Southerland*, 680 F.3d at 149 (internal quotations and citations omitted). This list, however, is not exhaustive. *Id.*

Plaintiffs argue that defendants are not entitled to qualified immunity as defendants removal of the Doe Children was not objectively reasonable. Specifically, Plaintiffs assert that Roe never committed any acts of violence against the Doe Children but only upon Jane Doe, the mother, and thus the presence of Roe at the family premises was insufficient to establish probable cause that the children were in immediate danger. The Court disagrees. Given the record before the Court as to the history between Jane Doe and Richard Roe, *at a bare minimum,* DCF officers of reasonable competence could disagree on the legality of defendants' decision that there was an immediate threat to the safety of the Doe Children and a risk that the Doe Children would be left bereft of care and supervision. Given the totality of the record before it, the Court must conclude that there would be

---

[5]"If the Commissioner of the Children and Families, or the commissioner's designee, has probable cause to believe that the child or any other child in the household is in imminent risk of physical harm from the child's surroundings and that immediate removal from such surroundings is necessary to ensure the child's safety, the commissioner, or the commissioner's designee, shall authorize any employee of the department or any law enforcement officer to remove the child and any other child similarly situated from such surroundings without the consent of the child's parent or guardian." C.G.S. § 17a-101g(e).

little disagreement, if any at all, between reasonably competent DCF officers as to the decision of defendants Whelan and Mysogland to immediately remove the children.

Defendants reviewed DCF's case record prior to the events in question, which outlines Roe's history of domestic violence. Ex. A 4/30/12. Defendants understood that at some time shortly before the encounter, Roe had assaulted Jane Doe and that one of the Doe Children walked into the room and witnessed the incident. Motion to Dismiss Ruling at 3 [Rec. Doc. 51]. Moreover, the DCF file, which defendant Whelan reviewed, contained an entry from David Williams, DCF Program Supervisor, that stated "[t]here have been previous assaults, and mother has yet to seek the recommended treatment and the safety planning done by family relations and criminal court is not adequate in regards to protecting children." Ex. S at 5. Defendants were also aware that there was a protective order prohibiting Roe from entering the family home and DCF Service Agreements/Safety plans that required Jane Doe to contact the police if Roe attempted to enter the house. Exs. I and J.

Upon arriving at the family dwelling, defendants concluded that Jane Doe assisted Roe in violating the protective order that prohibited Roe from entering the family dwelling by permitting him to enter. In fact, she knowingly permitted him to enter. Jane Doe's actions created a circumstance that posed an immediate threat to the safety of the Doe Children and a risk that the children would be left bereft of care and supervision because Jane Doe knowingly helped Roe violate a protective order. Moreover, Jane Doe lied about the presence of Roe at the family dwelling when questioned by defendants shortly before the removal of the children, which suggests that Jane Doe would not ensure that Roe would abide by the protective order in the future. The officers also indicated in their report that "[i]t became clear that [Doe Children's father ha[d] been at the residence several times" in violation of the protective order. Ex. K at 4.

Furthermore, Jane Doe violated two DCF Service Agreement/Safety Plans in which she agreed not to let the Doe Children's father into the home and to contact the police if he sought to gain entry. Ex. J. Specifically, Jane Doe agreed that "mother and children are not to have any contact with [Richard Roe]." Motion to Dismiss Ruling at 2 [Rec. Doc. 51]; Ex. J. Jane Doe did not notify the police that Roe sought to enter the house. The service agreement/safety plans were put in place for the Doe Children's safety as well as for Jane Doe's own safety. Her knowing violation of DCF's Service Agreement/Safety Plans demonstrated that it was objectively reasonable to conclude that the Doe Children were in immediate danger and left bereft of care and supervision as Jane Doe would not follow procedures put in place to secure the safety of the Doe Children.

Defendant Whelan also knew that Roe was still at large as he saw him run out of the house and into the woods. The fact that defendants could not locate Roe shows that the emergency still existed and that there was insufficient time to request a court order as Roe could return to the home at any time. Moreover, as Jane Doe had previously allowed Roe to enter the home several times before in violation of the protective order, it was reasonable for defendants to conclude that Roe would enter the home again and that the Doe Children would be left bereft of care and supervision if they were not removed. Ex. K at 4.

Given these circumstances, a reasonable DCF officer in defendants' positions could conclude that emergency circumstances existed to immediately remove the children from Jane Doe's custody without a court proceeding.  Thus, defendants' actions were objectively reasonable and defendants are entitled to qualified immunity on Plaintiffs' procedural due process claim.

Furthermore, within three days of the emergency removal, Judge Mottolese issued three *ex parte* orders, one per child, which temporarily continued the separation pending a trial. Ex. L. Within

a month of Judge Mottolese's *ex parte* orders, Superior Court Judge Carl E. Taylor subsequently

sustained Judge Mottolese's order after two full days of evidence in a trial with separate counsel

representing DCF, plaintiff Jane Doe, Roe, and the three children. Ex. O. Judge Taylor concluded that

"as to all three children . . .  that each is in immediate physical danger [from their] surroundings and

that continuation in their home is contrary to their welfare." *Id.* In that trial, the Doe Children's

attorney argued for and recommended removal of the children from both parents. Ex. R at 51-52.

Although Judge Taylor's ruling was approximately forty days after the removal of the Doe Children

from the home, it was based on identical facts relied on by defendants at the time of the Doe

Children's emergency removal.[6] Thus, the basis for the 96 hour hold and the subsequent judicial

findings that the children were at imminent risk were identical.[7] Although not an independent basis

for the Court's ruling, the foregoing supports the conclusion that the defendants' actions were

objectively reasonable at the time of removal.[8] *Ward v. Murphy*, 330 F. Supp. 2d 83, 93 (D. Conn.

2004); *Taylor v. Evans*, 72 F. Supp. 2d 298, 307 (S.D.N.Y. 1999) (finding that a subsequent court

order finding that removal is necessary based on "imminent" danger to children supported social

---

[6] It is important to note that there was no evidence before the Connecticut trial court that any additional events had occurred in between the invocation by defendants of the emergency 96-hour hold and the trial before Judge Taylor which placed or even could have placed the children at any further risk.

[7] Each argument Plaintiffs make in this matter was made by counsel on behalf of the parents at Judge Taylor's hearing: that case law prohibited the removal of a child based solely on the fact that the mother was the victim of domestic violence, Ex. R at 52-53; that there had been no showing of any physical abuse directed at the children, Ex. R at 53; that there was not probable cause for the initial taking, Ex. R at 56; that exculpatory information had been withheld from the OTC petition, Ex. R at 57; and that the Plaintiffs had various versions of what the eldest child saw when she walked into the room during Roe's assault on the mother, Ex. R at 58-62.

[8] In the ruling on defendants' motion to dismiss, Judge Haight stated "P]laintiffs do, at a minimum, seek to have this Court reject a legal conclusion that the state court has reached." Ruling on Motion to Dismiss at 10 [Rec. Doc. 51].

worker's contention that there was an objectively reasonable basis for belief that emergency existed).

Accordingly, defendants' motion for summary judgment will be granted as to Plaintiffs' procedural due process claim.

**Unlawful Seizure**

Removal of a child, even on a temporary basis, may be construed as a "seizure" under the Fourth Amendment, *see Tenenbaum*, 193 F.3d at 602, and therefore may give rise to a Section 1983 action, albeit one only "brought on behalf of a child by a parent" and not vicariously on behalf of the parent herself. *Green v. Mattingly*, 2010 U.S. Dist. LEXIS 99864, *36 (E.D.N.Y. Sept. 23, 2010); *E.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 366 (S.D.N.Y. 2010).

In the child welfare context, the question of whether a situation presents exigent circumstances sufficient to render a warrantless seizure reasonable presents the same inquiry applicable to the issue of whether an emergency removal of a minor child passes procedural due process scrutiny. *Ward*, 330 F. Supp. 2d at 95; *see Tenebaum*, 193 F.3d at 604-05. Consequently, as defendants are entitled to qualified immunity on Plaintiffs' procedural due process cause of action, and because the Fourth Amendment issue presents the same inquiry, defendants are entitled to qualified immunity on Plaintiffs' Fourth Amendment unlawful seizure claim. The Court must therefore conclude that it was objectively reasonable for defendants Whelan and Mysogland to take the actions they took in seizing the Doe Children.

Accordingly, defendants' motion for summary judgment will be granted as to Plaintiffs' unreasonable seizure claim.

**IV. Conclusion**[9]

Based on the foregoing, judgment will be rendered  in favor of defendants and against

Plaintiffs on each of Plaintiffs' claims.

_____
Tucker L. Melançon
United States District Judge

September 14, 2012
Bridgeport, CT

---

[9]As defendants' motion for summary judgment is being granted on other grounds, the Court need not address defendants' collateral estoppel argument.